# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KRISTY S., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 21 C 6230 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kristy S. seeks review of the final decision of the Acting Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). Kristy requests reversal of the ALJ's decision and remand [12], and the Acting Commissioner moves for summary judgment affirming the decision [18]. For the following reasons, the Court reverses the ALJ's decision and remands this case for further proceedings consistent with this opinion.

## BACKGROUND

Born on March 12, 1959, Kristy was 60 years old when she applied for DIB on March 21, 2019. Kristy alleges disability as of July 19, 2013 due to osteoarthritis, restless leg syndrome, fibromyalgia, anxiety, depression, acid reflux, spondylosis,[1] bulging herniated discs, chronic migraines, and torn rotator cuff on her right shoulder. Kristy obtained a high school education and previously worked as an admitting clerk at a hospital for outpatient scheduling.

Kristy's claims were initially denied on June 6, 2019, and upon reconsideration on December 16, 2019. (R. 13). On March 2, 2021, the administrative law judge ("ALJ") held a

---

[1] Spondylosis is "degenerative spinal changes due to osteoarthritis." *Green v. Berryhill*, 2018 WL 3036918, at *3 (N.D. Ill. June 19, 2018) (*citing* Dorland's Illustrated Medical Dictionary (32d ed.)).

supplemental telephone hearing, which Kristy and her attorney, Beth Miller, attended, and vocational expert ("VE") Gary Wilhelm and medical expert Dr. Goldstein testified. *Id*. at 29-56.[2] Following the hearing, the ALJ issued a ten-page decision on March 26, 2021, finding Kristy was not disabled. *Id*. at 13-22. The opinion followed the five-step process. 20 C.F.R. § 404.1520.

The ALJ concluded that Kristy had the following severe impairments: degenerative disc disease of the cervical spine with C5-6 radiculopathy,[3] mild left carpal tunnel syndrome, degenerative joint disease of the right shoulder,[4] and status post-surgical repair. (R. 16). The ALJ concluded that Kristy does not have an impairment or combination of impairments that results in any functional limitation(s) lasting at least twelve continuous months or that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. at 16, 17. Under the "paragraph B" analysis, the ALJ found that Kristy had no limitation in the functional area of understanding, remembering, or applying information, interacting with others, and adapting or managing oneself. *Id*. at 17. The ALJ concluded that Kristy had no greater than a mild limitation in the functional area of concentrating, persisting, or maintaining pace. *Id*. The ALJ considered Listings 1.02 for major dysfunction of a joint, 1.08 for soft tissue injury, 1.04 for disorders of spine, 11.14 for peripheral neuropathy, and 14.09 for inflammatory arthritis. *Id*. at 17-18. The ALJ then determined that Amy had the residual functional capacity ("RFC") to

---

[2] The ALJ stated that the March 2021 hearing was a continuation of a hearing on August 25, 2021, in which Kristy and her attorney, Beth Miller, attended, and VE Thomas Dunleavy testified. (R. 13). However, there is no transcript of this hearing in the administrative record filed with the Court.

[3] Degenerative disk disease is "a condition in which a damaged [spinal] disc causes pain." *Charles S. v. Saul*, 2020 WL 489430, at *2 n.2 (S.D. Ill. Jan. 30, 2020) (citation omitted). Radiculopathy refers to a "[d]isorder of the spinal nerve roots." *Lauren J. v. Saul*, 2019 WL 5864833, at *6 (N.D. Ill. Nov. 7, 2019) (*citing* Stedmans Medical Dictionary § 748650, Westlaw (database updated November 2014)).

[4] Degenerative joint disease is "a form of arthritis characterized by degeneration of the bone and cartilage in the joint." *Alexander v. Astrue*, 2010 WL 3199356, at *1 n.3 (N.D. Ill. Aug. 10, 2010) (citation omitted).

perform light work as defined in 20 CFR 404.1567(b) with the following limitations:

> Claimant can never climb ladders, ropes or scaffolds. Claimant can frequently climb ramps or stairs, balance, stoop, and crouch. She can occasionally kneel and crawl. Claimant can frequently reach, handle objects (gross manipulation) and finger (fine manipulations). Claimant must avoid concentrated exposure to extreme cold and heat. Claimant must avoid concentrated exposure to extreme wetness or humidity. Claimant must avoid concentrated exposure to respiratory irritants, such as fumes, odors, dusts and gases. Claimant must avoid concentrated exposure to vibrations. Claimant must avoid concentrated exposure to dangerous moving machinery.

*Id*. at 18. The ALJ concluded that in comparing Kristy's RFC with the physical and mental demands of her past relevant work as an admitting clerk, Kristy is able to perform her past relevant work as generally performed in the national economy but not as actually performed by her. *Id*. at 21-22.[5] As a result, the ALJ found Kristy not disabled. *Id*. at 22. The Appeals Council denied Kristy's request for review on September 16, 2021. *Id*. at 1-6.

## **DISCUSSION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir.

---

[5] The Dictionary of Occupational Titles classifies an admitting clerk as a semiskilled sedentary job with specific vocational preparation four, but Kristy performed the role as a medium job. (R. 21).

3

2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Kristy argues that the ALJ's decision should be reversed and remanded for three reasons. First, she contends that the ALJ erred by failing to properly evaluate Dr. Mohamed Ghumra and Dr. Steven Goldstein's medical opinions. Second, Kristy disagrees with the ALJ's RFC analysis and limitations. Third, she asserts that the ALJ improperly discounted her subjective symptom allegations. The Court finds the ALJ's evaluation of the medical opinion evidence was not supported by "more than a mere scintilla" of evidence. *Biestek*, 139 S.Ct. at 1154. Because this issue warrants remand, the Court does not reach Kristy's remaining arguments.

The Court finds at least two errors in the ALJ's conclusion that treating neurologist Dr. Ghumra's opinion was not persuasive, and medical expert Dr. Goldstein's opinion was

4

persuasive. The ALJ's evaluation of the medical opinion evidence in this case was subject to regulations pertaining to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under the regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ need only articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several factors, including supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c).

The most important factors when evaluating persuasiveness are supportability and consistency. 20 C.F.R. § 404.1520c(a). An ALJ must explain how he considered the factors of supportability and consistency in his decision, but he is not required to explain how he considered the other factors. 20 C.F.R. § 404.1520c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

On June 10, 2018, treating neurologist Dr. Ghumra completed a three-page questionnaire. (R. 1343-45). He explained that he had treated Kristy every three months since December 4, 2018, diagnosed her with cervical disc disorder, and described her symptoms, pain, and treatment. *Id*. at

5

1343. Dr. Ghumra opined that Kristy's depression and anxiety affected her physical condition, she could sit for approximately two hours, stand or walk about two hours, lift and carry ten pounds occasionally and less than ten pounds frequently, and could use the left upper extremity for reaching and handling for twenty-five percent of the workday and was unable to use her right hands, fingers, or arms at all. *Id*. at 1343-44. Moreover, Dr. Ghumra concluded that Kristy needed unscheduled work breaks and would likely be absent from work because of her impairments for more than four days per month. *Id*. at 1344-45. The ALJ found Dr. Ghumra's opinion not persuasive because it was purportedly not supported by the overall medical evidence, including his own treatment notes. *Id*. at 21.

On March 2, 2021, medical expert Dr. Goldstein testified at the supplemental hearing. (R. 34-44). He opined that the record showed degenerative disc disease of the cervical spine with evidence of radiculopathy and myelopathy and carpal tunnel, but no Listings were met, and he did not consider depression and anxiety. *Id*. at 35-36, 38, 40. Dr. Goldstein described abnormal studies, including a cardiac stress test. *Id*. at 36. Regarding Kristy's functional capacity, Dr. Goldstein opined that she could function at a light level with a limitation to frequent use of fine movements in the hands. *Id*. at 38-39. However, Dr. Goldstein disagreed with the limitations in Dr. Ghumra's opinion. *Id*. at 40-44. The ALJ accepted Dr. Goldstein's opinion in one sentence: "[t]he opinion of the medical expert, Steven Goldstein, M.D., is accepted and persuasive to the extent that the exertional demands are restricted to light with frequent manipulations." *Id*. at 21.

1. **Lack of Analysis**

First, the ALJ's opinion of the medical opinions lacks sufficient analysis of the evidence, including the supportability and consistency factors. "An ALJ may not discount the opinion of an examining physician without a valid explanation." *Paul v. Berryhill*, 760 F. App'x 460, 464 (7th

6

Cir. 2019) (citing *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014)). As discussed above, for all medical source opinions, "the most important factors" in evaluating a prior administrative medical finding are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). An "ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Indeed, "[s]imply stating, without elaboration or support, that their opinions were 'not supported by the record'" is insufficient. *Fatime I. v. Kijakazi*, 2022 WL 4605081, at *4 (N.D. Ill. Sept. 30, 2022); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (the Seventh Circuit has repeatedly admonished ALJs to "sufficiently articulate [their] assessment of the evidence to assure us that [they] considered the important evidence and ... to enable us to trace the path of [their] reasoning."); *Jose V. v. Kijakazi*, 2022 WL 3139571, at *3 (N.D. Ill. Aug. 5, 2022) (concluding ALJ's failure to discuss supportability and consistency with any specificity was error).

Beginning with Dr. Ghumra, the ALJ found his opinion not persuasive because it was purportedly not supported by the record and his treatment notes. (R. 21). First, to dispute Dr. Ghumra's limitation of Kristy to sitting for two hours, standing or walking two hours, lifting and carrying ten pounds occasionally and less than ten pounds frequently, and needing unscheduled work breaks, the ALJ cited Dr. Ghumra's December 18, 2018 treatment note. The ALJ relied on Dr. Ghumra's report "that the claimant had a normal gait and coordination with normal motor strength of 5/5 throughout." *Id*. (citing R. 1194). Second, the ALJ concluded that Dr. Ghumra's finding of 0% usage of the right upper extremity and 25% of the left was not supported, but without any citation to the record to support his conclusion. Lastly, the ALJ opined that Dr. Ghumra's standing and walking limitations were not supported by a cardiac stress test of 10.1 METS on September 12, 2018. *Id*. (citing 1317). In total, the ALJ cited only two records to support his

conclusion. *Id*.

The ALJ's discussion is nearly devoid of any analysis. Regarding supportability, the ALJ stated that Dr. Ghumra's opinion lacked support and referenced only two pages from a 1,446-page record. (R. 21). The ALJ did not explain why those two records undermined Dr. Ghumra's opinion. The ALJ did not explain how Kristy's normal gait, coordination, and motor strength are evidence that she does not need breaks or other accommodations. Likewise, the ALJ did not explain how Kristy's results on a cardiac stress test were probative of her ability to stand or walk for specific durations. Moreover, the ALJ said *nothing* concerning the consistency factor. While the ALJ need not use the explicit words "consistent" or "inconsistent," the ALJ must provide some analysis for the Court to review. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) ("the [ALJ's] decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues"). Here, the ALJ provided no analysis on this factor.[6]

Turning to Dr. Goldstein, the ALJ's opinion included only *one sentence* where the ALJ accepted Dr. Goldstein's opinion and found it persuasive "to the extent that the exertional demands are restricted to light with frequent manipulations." (R. 21). That was the extent of what the ALJ said. Again, an ALJ must include an analysis of the medical source opinions, including the supportability and consistency factors for a state medical expert. 20 C.F.R. § 404.1520c(b)(2); *Patrice W. v. Kijakazi*, 2022 WL 2463557, at *3 (N.D. Ill. July 6, 2022) ("The ALJ thus failed entirely to explain the supportability of the consultants' opinions, and only identified a conclusion—as opposed to an explanation—with respect to the consistency of the consultants' opinions with the record."). Boilerplate language without further explanation is "entirely unhelpful." *Schmidt v. Colvin*, 545 F. App'x 552, 557 (7th Cir. 2013) (rejecting the conclusion that

---

[6] Although the Acting Commissioner argues that the ALJ's statement that Dr. Ghumra's opinion was not supported is equivalent to and sufficient for a consistency analysis. *see* Doc. 18 at 4-5, the Court disagrees.

the opinion was "well reasoned and consistent with the body of evidence as a whole" because it "provides no indication of which portions of the record might actually be consistent" with the consultant's opinion). The ALJ accepted Dr. Goldstein's opinion in one sentence without explanation and without addressing why the opinion was persuasive only to the extent the exertional demands were restricted to light with frequent manipulations. Additionally, the ALJ did not include a single citation in his evaluation of Dr. Goldstein's opinion. Indeed, the Acting Commissioner agrees that the ALJ did not adequately analyze Dr. Goldstein's opinion. Doc. 18 at 7-9 ("The ALJ could have, and indeed *should* have, expressly stated that he found Dr. Goldstein's opinion consistent with the record and well-supported.) (emphasis in original).[7] Ultimately, the ALJ provided a "conclusion, not a reason (or reasons)" supporting his conclusion. *Mueller v. Astrue*, 493 F. App'x 772, 776 (7th Cir. 2012) (rejecting a one-sentence declaration that the doctor's opinion was inconsistent). Due to the boilerplate conclusion and lack of analysis, the Court cannot follow the ALJ's rationale for accepting Dr. Goldstein's opinion.

2. **Cherry-Picked Records**

Second, the ALJ relied on cherry-picked records and ignored conflicting evidence to conclude Dr. Ghumra's opinion was not persuasive. Remand is appropriate when an ALJ discounts a medical opinion by relying on cherry-picked evidence. *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018); *see also Cole v. Colvin*, 831 F.3d 411 (7th Cir. 2016) (finding that "the [ALJ] was cherry picking the medical record—which is improper"). Rather, an ALJ "must rest its

---

[7] The Acting Commissioner argues that Kristy was not harmed by this error. As the Court later explains, the ALJ's errors in reviewing the medical opinions were not harmless error. *See supra* at 12-13. Additionally, the Acting Commissioner's attempt to explain why the ALJ's conclusion was correct and grounded in the evidence of record is insufficient. Doc. 18 at 3-6; *see Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) (We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence."). Frankly, this is a case that was a good candidate for voluntary remand by the Commissioner.

denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Bakke v. Kijakazi*, 2023 WL 2473109, at *6 (7th Cir. Mar. 13, 2023) (quoting *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008)); *see also Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (An ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must consider all relevant evidence.).

Here, the ALJ identified only two records in discounting Dr. Ghumra's opinion. (R. 21). For the first of those records, the ALJ did not grapple with any of the evidence that conflicted with his conclusion. Specifically, the ALJ relied on Dr. Ghumra's report from December 18, 2018, that noted Kristy had normal gait, coordination, and motor strength. *Id*. (citing R. 1194). Yet the ALJ made no mention of contrary evidence in the same record. Notably, Dr. Ghumra reported that Kristy had multiple spasms in the neck and right side of the head, pain in the right eyeball, limited movement in the neck, low back pain and radiation down her right leg, symptoms of plantar fasciitis of the right leg, and memory issues. *Id*. at 1194. None of this was addressed by the ALJ.

Additionally, the ALJ did not confront and weigh Dr. Ghumra's other treatment records. For example, on December 28, 2018, Dr. Ghumra ordered an MRI, which revealed advanced osteoarthritic changes of mid to lower cervical spine. (R. 1213-14). Earlier in the ALJ's opinion, he identified this record and stated that it "disclosed degenerative changes at C4-7 with grade 1 retrolisthesis of C5 over C6 with facet arthropathy." *Id*. at 20 (citing 1213-14). Likewise, on December 9, 2013, Dr. Ghumra interpreted an EMG and identified mild left carpal tunnel syndrome and cervical radiculopathy. *Id*. at 1201-02. The ALJ did mention this record earlier in his opinion as evidence of radiculopathy. *Id*. at 20 (citing R. 1201-02). But simply identifying records in the statement of facts is not the same as actually analyzing the records when evaluating whether to accept or reject a medical opinion. While the Court reads the ALJs opinion as a whole,

10

and ALJs need only minimally articulate their analysis, it does not mean that ALJs can simply recite the cold medical record upfront, and then simply make conclusions without analysis later in the opinion. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) ("an ALJ must sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence and to enable us to trace the path of the ALJ's reasoning.") (cleaned up); *Hickman*, 187 F.3d at 689 (ALJ must "assure us that [he] considered the important evidence").

Further, the ALJ entirely ignored other records. The ALJ did not mention a December 4, 2018 treatment note where Dr. Ghumra described Kristy's spine and chest pain, numbness in her left hand and feet, a burning sensation mostly below her knee, and migraine headaches. *Id*. at 1192. Various records also documented Kristy's pain, limited strength, and restricted range of motion in her back, neck, and shoulder. *See, e.g.*, (R. 465, 511-12, 527-29, 557-59, 870, 1179). Additionally, tests that were consistent with Dr. Ghumra's findings included an MRI in November 2013, EMG in September 2016, and hand imaging in July 2013. *Id*. at 519, 564-65, 770. Rather than addressing this conflicting evidence, the ALJ cherry-picked two records and failed to explain why the contrary evidence did not change his conclusion in discounting Dr. Ghumra's opinion and Kristy's disability claim. Contrary to the Commissioner's argument, the Court does not view Kristy's argument as a request to reweigh the evidence because the Court has nearly no evidence identified in the ALJ opinion to review. Reweighing the evidence is when a Court reviews the ALJ's analysis of the evidence and finds that certain evidence requires more weight than others, which the Court cannot do. Rather, this is a case where the ALJ failed to minimally articulate his reasoning and support his decision with substantial evidence.

### 3. Harmless Error

Finally, the errors the Court has identified in the ALJ's review of the medical opinion

evidence are not harmless. Harmless error occurs when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" because remanding would be "a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Here, the ALJ's errors allowed him to find that Kristy could perform light work with limitations. If the ALJ had analyzed the opinions for supportability and consistency without cherry-picked records, it is possible that the ALJ would have found a more restrictive RFC, one that would have disqualified Kristy from performing light work. The medical records and treatment notes described above that the ALJ did not analyze are only two examples that could have led to further limitations. Moreover, the VE testified that most employers have standard ten-to-fifteen-minute rest or break periods in the first half and second half of the day, a thirty-minute meal break, and sedentary work requiring sitting for up to six hours in a workday. (R. 53-54). If the ALJ had found Dr. Ghumra's opinions regarding Kristy's ability to sit for two hours and need for unscheduled work breaks persuasive, *id*. at 1343-44, Kristy could have been found disabled. Therefore, it is not predictable with great confidence that the agency would reinstate its decision.

Viewing the record as whole, substantial evidence does not support the ALJ's decision based on the ALJ's failure to sufficiently explain his evaluation of the medical opinion evidence. This case must be remanded for further consideration. On remand, the ALJ must re-evaluate Dr. Ghumra and Dr. Goldstein's opinions and articulate his reasons for accepting or rejecting them, remaining mindful of the supportability and consistency factors. The Court also acknowledges that Kristy's other challenges may have merit, such as the ALJ's failure to account for Kristy's asserted need to lie down and use splints. *See, e.g.*, *Gibson-Jones v. Chater*, 111 F.3d 133, at *3 (7th Cir. 1997) (remanding the judgment of the district court "so that [the ALJ] may

12

identify more specific medical evidence supporting his rejection of [claimant's] testimony that she needed to lie down daily."); *Danny T. v. Kijakazi*, 2022 WL 279584, at *3 (N.D. Ill. Jan. 31, 2022) ("the ALJ's failure to account for Plaintiff's asserted need to lie down requires that this matter be remanded"). The ALJ should consider these arguments on remand as well.

## CONCLUSION

For these reasons, Plaintiff's request for reversal and remand [12] is granted and the Acting Commissioner's motion for summary judgment [18] is denied. The ALJ's decision is reversed, and the case is remanded to the agency for further proceedings consistent with this Opinion.

**SO ORDERED.**

Dated: March 24, 2023

Sunil R. Harjani
United States Magistrate Judge